THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ) | | |
| ) | Cr. No. 05-0275 (JDB) | |
| v. ) | | |
| ) | | |
| ELMER OSORTO BENITEZ ) | | |
| ) | | |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Mr. Osorto Benitez, through his counsel, Lara G. Quint, Assistant Federal Public Defender, hereby respectfully submits this memorandum in aid of sentencing pursuant to Federal Rule of Criminal Procedure 32. Based on all the sentencing factors in this case, including the United States Sentencing Guidelines, Mr. Osorto Benitez respectfully asks the Court to sentence him to a period of incarceration below the applicable Guideline range, to be followed by two years of supervised release. Mr. Osorto Benitez asks the Court to order that the sentence in the above-captioned case run concurrently to any other sentence Mr. Osorto Benitez is currently serving.

### BACKGROUND

Mr. Osorto Benitez was presented on April 4, 2004 pursuant to a complaint charging him with re-entry of an alien deported following conviction for an aggravated felony pursuant to 8 U.S.C. §§ 1326 (a) and (b)(2). On August 15, 2005, he pled guilty to a one-count Superceding Information charging him with the same offense. Mr. Osorto Benitez promptly informed the government of his intention to plead guilty and waived the preliminary and detention hearings to which he was entitled before the Magistrate Judge.

Given that Mr. Osorto Benitez did not enter a plea until four months after his initial

appearance, counsel wishes to provide the Court with some background and context against which to view his case. As indicated in the Presentence Investigation Report prepared on September 15, 2005, Mr. Osorto Benitez was recently sentenced in the District of Columbia Superior Court for two counts of Distribution of Cocaine. The Superior Court case was pending when Mr. Osorto Benitez was charged with the instant offense. It was undersigned counsel's hope and intention that, should Mr. Osorto Benitez decide to plead guilty in the local case, he would enter into a so-called "global plea agreement" with the government–to include both the federal and District offenses. Counsel discussed this option with counsel for the government, and the latter was consistently willing to consider such a disposition. In addition to conferring with the government, counsel consulted with Mr. Osorto Benitez's Superior Court attorney and asked him to notify her should their mutual client decide to plead guilty in the local case. While counsel is aware of the fact that sentencing is a matter left to the discretion of the judge–and advised Mr. Osorto Benitez thus– it was her belief that, should he wish to plead guilty in both cases, a single agreement would be in his best interest. Mr. Osorto Benitez's first Superior Court attorney was in agreement, and promised to inform counsel of his client's decision. Unbeknownst to counsel, however, Mr. Osorto Benitez obtained new counsel in the Superior Court matter and pled guilty in the Superior Court case before a global disposition could be drafted and considered. At that point, counsel contacted Mr. Osorto Benitez's new attorney and asked to be informed regarding possible sentencing dates in the Superior Court case, knowing that that information would be relevant to such important matters as her client's criminal history. Once again, counsel was not informed until after Mr. Osorto Benitez had been sentenced. While there was clearly a communication breakdown despite counsel's best attempts, counsel submits that this brief history should be taken into consideration at Mr. Osorto Benitez's sentencing.

**DISCUSSION**

**I.      THE POST-BOOKER SENTENCING FRAMEWORK.**

Under Justice Breyer's majority opinion in Booker, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. See 18 U.S.C. § 3553(a)(4)." United States v. Booker, _ U.S. __, 2005 WL 50108,*27 & n.1 (U.S. Jan. 12, 2005) (Breyer, J.). While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in Booker held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Pursuant to Booker, therefore, courts must treat the Guidelines as but one, among several, sentencing factors.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a)–which were explicitly endorsed by the Supreme Court in Booker–sentencing courts should consider the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available,

the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the Booker majority:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of Booker, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. With respect to *departures* from the Guideline range, in particular, following Booker courts need not justify sentences outside the Guidelines by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may disagree with the range proposed by the Guidelines in individual cases and exercise their discretion.

**II.     UNDER ALL OF THE RELEVANT SENTENCING FACTORS, MR. OSORTO BENITEZ SHOULD RECEIVE A SENTENCE OF INCARCERATION BELOW THE APPLICABLE GUIDELINE RANGE.**

A.     Statutory Provisions

Pursuant to the applicable statutes, the maximum term of imprisonment is twenty years. 8 U.S.C. §§ 1326 (a) and (b)(2).

B.   Advisory Sentencing Guidelines

(I).   *Applicable Guideline Range*

The Probation Office, consulting the 2004 edition of the Guidelines Manual, has concluded that the Total Offense Level in this case is 22 and that Mr. Osorto Benitez's criminal history category is III, resulting in an advisory Guideline range of 51-63 months.

While the difference is immaterial with respect to the resulting Guideline range, Mr. Osorto Benitez nevertheless challenges the conviction listed at paragraph 28, page 6, of the Presentence Investigation Report. Mr. Osorto Benitez is unaware of any charges against him in Nagodoches, Texas and maintains that he was residing in Washington, D.C. during the relevant time period.

C. Other Factors

As noted above, pursuant to 18 U.S.C. §§ 3562 and 3553(a) sentencing courts should consider the need for the sentence imposed 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and 4) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged. Specifically, courts should "impose a sentence sufficient, but not greater

than necessary, to comply with the purposes" set forth above.

### I. Nature of the Offense

While Mr. Osorto Benitez in no way wishes to diminish the seriousness of the offense, he notes that it was brought about by desperation and economic necessity. As indicated in the Presentence Investigation Report, Mr. Osorto Benitez began working at the age of nine and eventually dropped out of school in order to financially assist his large family. Each time that Mr. Osorto Benitez entered the United States, he not only worked to earn a living but sent significant portions of what he earned home to his mother in El Salvador. The lengths to which he went to seek better opportunities are belied by the fact that, when he entered the country in 1988, he crossed a river on foot to reach U.S. soil.

The offense with which Mr. Osorto Benitez is charged in this case is a "status crime." When authorities arrested Mr. Osorto Benitez on cocaine distribution charges, they learned of his immigration status and charged him, in a different court, with the instant offense.  Mr. Osorto Benitez is currently serving time for the distribution charges, just as he served time in the past for the criminal conduct he engaged in prior to his deportation.  Mr. Osorto Benitez readily accepted responsibility for his immigration-related offense and informed the government in a timely fashion of his intention to plead guilty in the case.  Mr. Osorto Benitez submits that the nature of the offense as a status crime and the fact that he is serving a substantial period of time in conjunction with his more serious offense are relevant factors for the Court's consideration.

### II. Characteristics of the Defendant

Mr. Osorto Benitez is a hard-working individual who has consistently maintained

employment and complied with his financial obligations and responsibilities. Despite having entered this country without permission, he began working soon after he arrived not only to maintain himself but to better provide for his family and three year-old child.

While Mr. Osorto Benitez does have a prior record, each of his encounters with the criminal justice system appears to have been economically motivated. Mr. Osorto Benitez admits to having suffered from substance abuse but, unfortunately, was never provided with the opportunity to treat his self-destructive habit. Mr. Osorto Benitez engaged in criminal activity largely to finance his addiction. As made evident from the Presentence Investigation Report, he does not have a violent history. At this point, Mr. Osorto Benitez wants nothing more than to pay society the dues he owes and return to his home country.

### III. Needs of the Community and Public

As indicated above, Mr. Osorto Benitez is serving an eight-year sentence in conjunction with his recent Superior Court case. The amount of time is significant and will ensure that the public is protected from further illegal, drug-related activity. With respect to the illegal re-entry charge, further incarceration will do nothing to protect the public from harm and, arguably, will prove a drain on society. According to Bureau of Prison estimates, the annual cost of incarcerating a federal inmate is approximately $23,000-$24,000. Especially in light of the fact that, upon his release, Mr. Osorto Benitez will not have the opportunity to contribute to the society and economy of the United States, the costs associated with incarcerating him at all are quite significant. Incarcerating him for a period between 51 and 63 months, on top of the eight years he is serving, would be astronomical.

Furthermore, in light of the detainer filed against Mr. Osorto Benitez by the immigration

authorities, Mr. Osorto Benitez faces continued confinement even after the completion of his Court-imposed sentence. Due to problems involving placement and resources, there are likely to be delays with respect to his deportation. As a practical reality, therefore, Mr. Osorto Benitez is likely to be confined for a period significantly longer than that ordered by the Court.

Finally, while the U.S. community will certainly not suffer from Mr. Osorto Benitez' release following his eight year sentence, his family in El Salvador will suffer significantly from his continued detention.

*IV. Educational Training, Vocational Training, Treatment*

In light of his status as a deportable alien, Mr. Osorto Benitez will be unable to participate in much-needed rehabilitative programs.[1] While prisoners in federal facilities have the right to participate in pre-release programs aimed at facilitating their re-entry into the community pursuant to 18 U.S.C. § 3624(c), the case of *Lartey v. Dep't of Justice,* 790 F. Supp. 130 (W.D.LA. 1992), held that the right to participate in such programs was unavailable to deportable aliens and applied only to prisoners being released into communities within the United States. Because present law requires that an alien convicted of a federal offense and sentenced to imprisonment must serve the entire sentence (minus statutory good time and time served) and precludes an alien from eligibility for participation in certain programs while confined, it follows that the defendant in this case faces more severe treatment than he otherwise would by the Bureau of Prisons**.** The D.C. Circuit has specifically held that a sentencing court may consider whether a defendant's status as a deportable alien is likely to cause a fortuitous increase in the

---

[1] As indicated above and in the Presentence Investigation Report, Mr. Osorto Benitez has never received treatment for his substance abuse problem.

severity of his confinement. *U.S. v. Smith,* 27 F.3d 649 (D.C. Cir. 1994) . Because Mr. Osorto Benitez is not eligible for community- or home-detention and participation in certain programs, he is likely to face a more severe confinement than he otherwise might. The Court should take all these factors into consideration.

## **CONCLUSION**

      For the reasons set forth above, as well as for any others that it may deem fair and reasonable, Mr. Osorto Benitez asks the Court to sentence him to a period of incarceration below the applicable Guideline range. Such a sentence would be sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553.

Respectfully submitted,

A.J. Kramer
Federal Public Defender


_____/s/_____
Lara G. Quint
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Washington, D.C.  20004
(202) 208-7500 ex.134
