IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 05-275 (JDB) |
| | : | |
| v. | : | Judge John D. Bates |
| | : | |
| ELMER OSORTO-BENITEZ, | : | Sentencing February 16, 2006 |
| Defendant. | : | |

### MEMORANDUM IN AID OF SENTENCING AND
### MOTION FOR REDUCTION OF OFFENSE LEVEL FOR ACCEPTANCE OF RESPONSIBILITY

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing and requests that the Court, in determining the appropriate sentence for the defendant calculate and consider, as advisory, the pertinent sections of United States Sentencing Guidelines. The Court also should apply an additional one-level downward adjustment for acceptance of responsibility. In doing so, the appropriate Guidelines sentencing range is 46- 57 months based upon an offense level calculation of 21 and a Criminal History Category of III. The applicable range advised in the Guidelines is in Zone D of the Sentencing Table which precludes eligibility for probation. Any request by the defendant that the Court sentence him to time served, concurrent time or depart downward should be denied. The Government, therefore, requests that the defendant be sentenced to a 46-month period of incarceration.

### Background

The defendant is a native and citizen of El Salvador who entered and is present in the United States unlawfully, and who previously has been deported from the United States subsequent to a conviction for an aggravated felony without applying for the express consent of

the Attorney General of the United States or the Secretary of Homeland Security.  On April 4, 2004, the defendant was initially presented to the Magistrate Judge on a charge of unlawful reentry of a deported alien following conviction for an aggravated felony.  The defendant did not object to being held without bond as a flight risk pending further proceedings.  On August 15, 2005, the defendant waived a grand jury indictment and pled guilty to a one-count information charging him with unlawful reentry of a deported alien following conviction for an aggravated felony on August 15, 2005.  The parties did not enter into a plea agreement.  The defendant was held without bond pending sentencing.

The defendant had come to the attention of the Immigration and Customs Enforcement authorities upon his arrest in Washington, DC on February 23, 2005, on charges of distribution of cocaine.  The defendant pled guilty to two counts of distribution of cocaine on July 15, 2005 in the District of Columbia Superior Court.  He was sentenced on September 12, 2005 to two consecutive terms of 4 years of imprisonment, for a total of 8 years of imprisonment.

The offense of unlawful reentry of a deported alien following conviction for an aggravated felony is punishable by (i) imprisonment of up to twenty years pursuant to 18 U.S.C. §§ 1326(a) and (b)(2), (ii) a fine of up to $250,000 pursuant to 18 U.S.C. §3571(b)(3), and (iii) a term of supervised release not to exceed three years pursuant to 18 U.S.C. § 3583(b)(2).  In addition, the defendant may be required to pay a special assessment of $100.  See 18 U.S.C. § 3013.

The United States respectfully submits that nature of the offense and characteristics of the defendant are such that a sentence of 46 months of imprisonment is reasonable, after due

consideration of the appropriate Sentencing Guideline range and the statutory sentencing objectives.

### Recommended Sentence

As a threshold matter the application of United States Sentencing Guidelines is no longer mandatory. In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), however, the United States Supreme Court made clear that, in determining the appropriate sentence for a defendant, federal courts should calculate and consider the applicable guidelines range, refer to the pertinent Sentencing Commission policy statements, and bear in mind the need to avoid unwarranted sentencing disparities.

Additionally, the Supreme Court upheld the Guidelines as the most appropriate benchmark for informing courts of the most reasonable sentence for a particular defendant who has committed a particular crime. Furthermore, in light of (1) the mandate that "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." <u>Id.</u> at 767 (citing 18 U.S.C.A. §§ 3553(a)(4)&(5) (Supp. 2004)), (2) the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines, and (3) the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable <u>per</u> <u>se</u>. Not only is a sentence within the Guideline range presumptively reasonable, but it also accommodates the salutary goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

Accordingly, in determining an appropriate sentence for the defendant, the United States respectfully submits that this Court should consider the United States Sentencing Guidelines, the

nature and circumstances of the offense and the history and characteristics of the defendant, as well as the applicable sentencing objectives, that is, that the sentence (1) reflect the seriousness of the offense; (2) promote respect for the law; (3) provide just punishment; (4) afford adequate deterrence; (5) protect the public; and (6) effectively provide the defendant with needed educational or vocational training and medical care.  See 18 U.S.C. § 3553(a)(1)& (2).  The applicable Guidelines ranges should play a particularly prominent role in the sentencing of the defendant in this case because he can articulate no factor that has not already been considered by the United States Sentencing Commission.

**I.      The United States Sentencing Guidelines Support a Sentence of Incarceration.**

The Court should conclude the Sentencing Guidelines support the imposition of a 46-month sentence of imprisonment.

**A.      The Court Should Adopt the Adjusted Offense Level as Calculated in the Presentence Investigation Report.**

Under the Sentencing Guidelines, which are still central to the sentence to be imposed by the Court, the base offense level is 8 under U.S.S.G. §2L1.2(a).  Section 2L1.2(b)(1)(A)(ii) provides for a sixteen-level increase if the defendant was previously deported after conviction for a felony that is a drug trafficking offense for which the sentence imposed exceeded 13 months.  The predicate aggravated felony in this case is a conviction for Attempted Possession With Intent to Distribute Cocaine, for which the sentence imposed on the defendant was time not to exceed 5 years.  USSG § 2L1.2, comment. (n.1(B)(iv) & 5).  Accordingly, the defendant's adjusted offense level will be 24.

## B. The Court Should Apply an Additional One-Level Downward Adjustment for Acceptance of Responsibility.

Pursuant to U.S.S.G. §3E1.1(a), the United States concurs that the defendant is entitled to a two-level downward adjustment for acceptance of responsibility. The United States hereby moves this Court to decrease the defendant's offense level by one additional level pursuant to U.S.S.G. §3E1.1(b), because in light of the defendant's post-plea conduct, the defendant has assisted authorities in the investigation of his own misconduct by timely notifying the authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently. Accordingly, contrary to the position of the United States at the time the Presentence Investigation Report (PSR) was prepared, the United States now moves this Court for a total 3-level downward adjustment for acceptance of responsibility. This results in a Total Offense Level of 21.

## C. The Court Should Adopt the Criminal History Category Calculation In the Presentence Investigation Report.

The United States concurs with the calculation of the defendant's Criminal History Category as III, and submits that the Court should adopt that calculation in the PSR. The United States submits that the sentencing Court is entitled to find by a preponderance of the evidence all the facts relevant to the determination of the Guideline sentencing range and all facts relevant to determination of the ultimate sentence.[1]

---

[1] Under U.S.S.G. § 6A1.3(b), which remains in effect post-Booker, the district court is required to "resolve disputed sentencing factors . . . in accordance with Rule 32(i), Fed. R. Crim. P." The Commentary to this Guideline provides for use of the preponderance of the evidence standard. Booker contemplates that, with the mandatory use of the Guidelines excised, the Sixth Amendment will not impede a sentencing judge from finding all facts relevant to sentencing.

Accordingly, with a Total Offense Level of 21 and a Criminal History Category of III, the United States Sentencing Guidelines range for the defendant is 46 -57 months.

### D. The Court Should Not Depart Downward from the Sentencing Guidelines Range.

The defense memorandum in aid of sentencing ("Def. Mem.") identifies the defendant's status as a deportable alien as a possible ground for a more lenient sentence. Def. Mem. at 8-9. The Court should reject this request for a downward departure because the defendant has not identified any factors that are present to such a an exceptional degree that his status as a deportable alien should dictate a more lenient sentence. Even the defense memorandum states that a downward departure pursuant to United States v. Smith, 27 F.3d 649 (D.C. Cir. 1999) may be appropriate "if the defendant's status as a deportable alien is likely to cause *fortuitous* increase in the severity of his confinement" (emphasis added). Def. Mem. at 8-9.

The direction of the D.C. Court of Appeals, in Smith, was that the application of a departure was to be "highly infrequent" (27 F.3d at 655) and that it is only to be applied in those rare situations in which "a particular case presents atypical features." Smith, 27 F.3d at 654. In drug cases, like Smith, it can be argued that different offenders (for example, two drug dealers, otherwise similarly situated except that one is an alien) are subjected to different treatment. However, the same cannot be said in immigration cases, because a defendant's status as a deportable alien is most definitely *not* "atypical" of all other defendants convicted of reentry after deportation.

---

Booker, 125 S. Ct. at 750, 764.

It is an inescapable fact that defendants in reentry after deportation cases will be subjected to further deportation hearings at the conclusion of the sentences imposed. The United States requests, therefore, that the Court reject any invitation of the defendant to impose a lenient sentence or a concurrent sentence because of his status as a deportable alien.

II.     **The Sentencing Objectives Warrant a Lengthy Sentence of Incarceration.**

The United States respectfully submits that all of the sentencing objectives the Court should consider support a lengthy sentence of incarceration in this case.

   A.     **History and Characteristics of the Defendant.**

The defendant is a native and citizen of El Salvador who has previously been deported from the United States. The defendant is not legally eligible to work in the United States, however, he reported working as a painter in the United States and as a welder in El Salvador.[2] PSI ¶ 45. Eight of the defendant's brothers and sisters, as well as his mother, all live in El Salvador. PSA ¶ 32. While he may have some family dispersed throughout the United States, his continued presence in the United States is by no means assured because he is a deportable alien. Accordingly, the defendant's ties to the community can hardly be more tenuous. He has one minor dependent, a daughter, who he claims to support financially, but has no contact with other than by telephone. PSI ¶ 35. The United States submits that the defendant can support this child from El Salvador, and, in any event, will be in no position to support this child while incarcerated. Furthermore, the defendant has several prior criminal convictions, including a 1989

---

[2] The defendant suggests he sold drugs to finance his addiction, Def. Mem. at 7, however, there is no basis in this record to suggest this motivation – he could easily have sold drugs purely for the money. The United States notes that the defendant has managed to remain drug free in jail. PSI ¶ 40 (a drug test administered at the time of his initial presentment was negative for the presence of illicit drugs).

conviction for attempted possession with intent to distribute cocaine, and the recent 2005 conviction for distribution of cocaine. PSR ¶¶ 25-26. These prior convictions suggest he has returned to a lucrative life of crime: This defendant has abused the hospitality of the United States, and deserves no leniency in his sentence.

  **B.** **The Nature and Circumstances of the Offense, Seriousness of the Offense, Just Punishment, and Deterrence.**

  The seriousness of the offense is manifested by the statutory maximum sentence of 20 years of imprisonment. The penalties for reentering the country after deportation vary widely depending upon an alien's criminal history. Without a criminal history, the penalty is imprisonment of not more than two years. 8 U.S.C. § 1326(a). Aliens who reenter after "the commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony)" are subject to a maximum sentence of 10 years of imprisonment. 8 U.S.C. § 1326(b)(1). The harshest penalties are reserved for aliens who reenter after having been previously convicted of an aggravated felony – a maximum of 20 years of imprisonment. 8 U.S.C. § 1326(b)(2). The clearly defined legislative goal of 8 U.S.C. § 1326(b) was to severely punish unlawful reentry into the United States. Congress imposed a 20-year maximum sentence in order to impose a genuine consequence on aggravated felons who return to the United States and to deter recidivism.

  Additionally, the Sentencing Commission created a carefully calibrated scheme aimed at producing sentencing ranges that will differ depending upon the existence and nature of a prior felony conviction. The scheme set forth in U.S.S.G. §2L1.2 reflects the determination that the offense of unlawful reentry subsequent to conviction for certain types of aggravated felonies (for

8

example, narcotics violations or crimes of violence) is sufficiently more serious than the commission of the same offense without have such a prior conviction, and therefore warrants greater punishment. Additionally, the Guideline incorporates a conclusion that an alien, who, having been deported following conviction for an aggravated felony, and having exhibited a willingness to flout the laws of the United States again by reentering the country without permission, may be more likely to commit serious crimes than an alien who unlawfully reenters this country without a criminal record or with a less serious record and therefore deserves a sentence possessing a greater deterrent effect.

In this case, the history and characteristics of the defendant indicate that he should be accorded greater punishment as a deterrent and to reflect the seriousness of the offense: He has reentered the United States without permission subsequent to deportation and has committed further criminal offenses, the most recent conviction occurring in September, 2005.

If the defendant in this case is now subject to a lengthy prison term, that prison term should act as a disincentive for the defendant to make an immediate return to the United States by any means, and to remain in the United States until caught. The defendant is likely to think twice before deciding to reenter the United States in blatant violation of an order of deportation barring return without approval of the Attorney General of the United States or the Secretary of the Department of Homeland Security.

    **C.**    **The Need to Promote Respect for the Law, to Protect the Public, and Deterrence.**

Incarceration for a period contemplated by the guidelines ranges would promote respect for law and protect the public. Merely deporting the defendant would not provide adequate

deterrence: The defendant has previously disregarded the law and made his way back to the United States. Upon his return, the defendant did not maintain a law-abiding existence, but instead committed further criminal offenses. Had the defendant obeyed the prohibition against his presence in the United States, the hazard he poses to the public and the law-enforcement expense he creates could have been avoided. Imposing a probationary sentence, a sentence equivalent to "time served," or a concurrent sentence would signal to the public that the offense is not taken seriously by the Court, especially because such a sentence would fall outside the range contemplated by the United States Sentencing Guidelines, and contrary to the statutory guidance.[3] By imposing a significant period of incarceration, consecutively, the public would be assured that criminal offenses will be punished, and the time in prison will make the defendant think twice about repeating his criminally offensive behavior upon release.

###    D.    The Need to Provide Educational or Vocational Training and Medical Care.

Finally, a sentence of incarceration will effectively provide the defendant with access to educational and vocational resources as well as continued medical care. Any needs of the defendant in these areas can be met in prison.

---

[3] The applicable range is in Zone D of the Sentencing Table, which precludes eligibility for probation. Additionally, although the Court does have discretion to impose the sentence in this case concurrently, partially concurrently, or consecutively to the undischarged Superior Court sentence the defendant is serving, see U.S.S.G. § 5G1.3(c), p.s., Congress has determined that sentences imposed at different times are presumptively consecutive. See 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."). The Court is to consider the same sentencing factors in determining whether to impose a sentence concurrently or consecutively. 18 U.S.C. § 3584(b).

**Conclusion**

The United States submits that fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing and should occur absent unusual circumstances, with due regard for the information contained in the presentence report for the Court in this case in which the applicable Sentencing Guidelines range is calculated and the history and characteristics of the defendant as well as the defendant's history of criminal convictions are thoroughly set forth for the consideration of the Court in imposing a sentence. In this case, the United States respectfully requests that the Court impose a 46-month sentence of imprisonment, followed by three years of supervised release.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY

By: _____
Catharine A. Hartzenbusch
Assistant United States Attorney
D.C. Bar No. 450-194
555 Fourth Street, NW, Room 4233
Washington, DC 20530
(202) 353-8822
Catharine.Hartzenbusch@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I will cause to have the foregoing served upon counsel for the defendant, Lara Quint, Esq., by electronic filing this 13th day of February, 2006.

_____
Catharine A. Hartzenbusch
Assistant United States Attorney